NO. 07-09-0109-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

JUNE 5, 2009

______________________________

DOUGLAS RUBINS, APPELLANT

V.

TEXAS WORKFORCE COMMISSION, TOM PAUKEN,

AND L.A. FULLER & SONS CONST., CO., APPELLEES

_________________________________

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 96,974-E; HONORABLE DOUGLAS WOODBURN, JUDGE

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

MEMORANDUM OPINION

Appellant, Douglas Rubins, proceeding pro se, filed this appeal from the trial court’s order dismissing, with prejudice, his case against Appellees, Texas Workforce Commission, Tom Pauken, and L.A. Fuller & Sons Const., Co.  By letter from this Court dated April 14, 2009, Rubins was notified that among other items, a filing fee of $175 was due within ten days.  In response, Rubins filed a motion for extension of time in which to pay the filing fee or, in lieu thereof, file an affidavit of indigence.  The motion was granted to May 25, 2009,
(footnote: 1) with a detailed explanation of the procedures and deadlines for either filing an affidavit of indigence or paying the filing fee.  
See
 Tex. R. App. P. 10.5(b), 20.1(c)(1) & (3).  Rubins was also admonished that failure to either pay the required filing fee of $175 or file a compliant affidavit of indigence accompanied by a motion for extension of time might result in dismissal of this appeal.  Tex. R. App. P. 42.3(c).  
Rubins did not respond to this Court’s notice.  Neither did he pay the required filing fee or file an affidavit of indigence.

In response to a motion for extension of time in which to file the clerk’s record for nonpayment, this Court abated the request pending Rubins’s compliance with the Court’s directive.  Rubins’s failure to comply with the Court’s directive renders the clerk’s request for an extension of time moot.

Accordingly, the appeal is dismissed for failure to comply with an order of this Court.  Tex. R. App. P. 42.3(c).

Patrick A. Pirtle

      Justice

åÉ v. State
, 46 S.W.3d 243, 255 (Tex. Crim. App. 2001); 
Curry v. State
, 30 S.W.3d at 404-05.  At least one of the means it selected.  Indeed, the differing manner and means are not merely descriptive of an element and, therefore, subject to being ignored.  
Gollihar v. State
, 46 S.W.3d at 254 n.15.  Instead, they are elemental to conviction and must be established when alleged.  
Curry v. State
, 30 S.W.3d at 405.  

Consequently, 
Malik
 and its idea of a hypothetically correct charge cannot be used to morph allegations involving the manner and means by which a crime was committed to some others that are unmentioned in the indictment.  Nor can 
Malik
 be applied to relieve  the State from proving the manner and means expressed in the indictment when the evidence actually describes some other manner and means.  

Now, one can commit burglary in several ways.  He can merely enter a habitation and commit or attempt to commit a felony, theft, or an assault.  
Tex. Pen. Code Ann
.
 §30.02(a)(3) (Vernon 2003).  Or, he can enter a private habitation with the intent to commit a felony, theft, or an assault.  
Id.
 at §30.02(a)(1).  Or, he can conceal himself in a habitation with the intent to commit a felony, theft, or an assault.  
Id
. at §30.02(a)(2).  In comparing these differing manner and means of committing burglary, one sees that two of the three come with a 
mens rea
 element tied to the accused’s entry into the edifice, 
i.e.
 §30.02(a)(1) and (2).  One has no such element, that is, §30.02(a)(3).  So, if the State opts to indict the accused under the statute and selects a manner and means accompanied by a 
mens rea 
requirement, 
Gollihar
 and 
Curry
 obligated it to prove that the accused had the particular 
mens rea
 when entry occurred.  
And, that is what the State attempted here.

In the count of the indictment upon which appellant was eventually tried, (
i.e.
 Count 2), the prosecutor accused appellant of “enter[ing] a habitation with 
intent to commit robbery
 and did then and there commit the offense of robbery.”  (Emphasis added).  So, having accused appellant of entering the house with such an intent, it opted to prosecute appellant for burglary of the type described in §30.02(a)(1) of the Penal Code.  In other words, it obligated itself to prove he entered the abode with the intent to commit a felony, theft, or an assault.  This, in turn, meant that in assessing whether it carried its burden of proof, we must determine, among other things, if there exists evidence upon which a rational factfinder could hold beyond reasonable doubt that appellant intended to commit robbery when he entered the house.  
Malik
 cannot relieve us from doing so.  Nor can it be used to convert allegations founded upon §30.02(a)(1) that tie entry to a particular 
mens rea
 to one founded upon §30.02(a)(3) that has no such link.  

Moreover, that both the prosecutor, appellant, and trial court read the indictment as encompassing burglary under §30.02(a)(1) is established by their own words.  For instance, the trial court charged the jury that it could not convict unless it found, beyond reasonable doubt, that appellant “
enter[ed] the habitation with intent to commit robbery 
and did then and there commit . . . robbery . . . .”  (Emphasis added).  Following that, the State closed by arguing:

Do you really think that day, . . . when that Defendant and his cohort, . . . were breaking in to . . . John Hernandez’s home with this crow bar that he didn’t have a plan on how he was going to get out of there if the owner had come home?

*     *     *

. . . 
he knew what he was going to do. 
 
He knew that this [crowbar] was the weapon he was going to use if he had to get out 
. . . 
.  He went in there with the intent to commit robbery 
and he did commit the robbery.

*     *     *

He went in there with the intent to commit robbery.  And, guess what, folks? He did.

(Emphasis added).  In turn, defense counsel told the jury that:

. . . what is lacking here is 
the intent to commit the robbery
.  The phrase ‘and did commit the offence of robbery,’ that’s true.  That did happen . . . . 
 What you’re looking at is the intent, the specific intent
, 
at the beginning of this
.  That’s what the law defines. If the specific intent was to commit theft or commit robbery.  And I will submit to you, all the evidence in this case indicates to you it was theft.  It was not robbery.  There was a robbery
, but that was not the intent on the entry into the habitation
.

(Emphasis added).  Each of these excerpts reveals the crime for which appellant was being prosecuted.  It was burglary, of course, but the type of burglary that required entry with a specific intent to do some other criminal act, 
i.e.
 burglary under §30.02(a)(1).  There can be no other logical reason why the litigants would so argue if appellant’s 
mens rea
 when entering the home was unimportant.  And, those thoughts were incorporated into the jury charge written by the trial court.  Everyone read the indictment as encompassing burglary under §30.02(a)(1), as opposed to burglary simply under §30.02(a)(3). 

In sum, neither a legal nor factual sufficiency issue can be decided without assessment of the evidence touching upon appellant’s 
mens rea
 at time of entry.  And, because the majority concludes otherwise, I respectfully dissent.

      

Brian Quinn

          Chief Justice

Do not publish.

FOOTNOTES
1:
The deadline was extended to Tuesday, May 26, 2009, due to the holiday.  
See 
Tex. R. App. P. 4.1(a)